767 P.2d 382

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ray HUGHES, Defendant–Appellant.**

**No. 10349.**

Court of Appeals of New Mexico.

Dec. 6, 1988.

Certiorari Denied Jan. 10, 1989.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Hollis A. Whitson, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

OPINION

MINZNER, Judge.

Defendant was convicted of trafficking in controlled substances by manufacture, conspiracy to traffic controlled substances, racketeering, conspiracy to racketeer, receiving stolen property over $100, and possession of drug paraphernalia. On appeal, defendant contends that there was insufficient evidence to support his convictions of receiving stolen property, racketeering, and conspiracy to racketeer. He also contends that the trial court erred in failing to merge his convictions for conspiracy to traffic and conspiracy to racketeer. We affirm.

During the calendaring process, defendant moved to amend his docketing statement to add two new issues. Based on the factual and legal arguments made in the motion, we denied the motion because the issues sought to be raised were without merit. *See State v. Rael,* 100 N.M. 193, 668 P.2d 309 (Ct.App.1983). Despite that denial, defendant requests that we consider those issues at this point in the appeal process. We decline to do so. *Cf. id.*

DISCUSSION.

I. Receiving Stolen Property Conviction.

Defendant was convicted of receiving laboratory equipment stolen from a wastewater plant. Under the instruction given, the jury was required to find that the market value of the equipment was more than $100. Defendant maintains that there was insufficient evidence to support the finding.

The only evidence submitted as to the value of the equipment was the testimony of Joe Smith, an employee of the wastewater plant. Mr. Smith testified that he had worked for the wastewater plant for three and one-half years. He worked with the equipment, although another person had purchased most of it. He testified further that he had examined the equipment at trial and found it to be in working order, and it was his opinion that the equipment was worth far more than $100. He stated that, although he might be wrong about the specific value, there was not much doubt that it was worth over $100. However, he also testified that he was not familiar with the market value of used laboratory equipment.

Outside the presence of the jury, in an offer of proof, Mr. Smith testified as follows. He was familiar with new equipment prices from periodically reviewing equipment catalogs and replacing the stolen equipment. The equipment had been kept in good shape while it was at the laboratory and had shown little deterioration. The cost of a new analytical balance would be about $2,495, a pH meter $850, and a pH stick $250. Mr. Smith did not state the cost of a new microscope, which defendant was also accused of receiving. Mr. Smith stated that he would pay $1,000 for the analytical balance if it worked, over $100 for the microscope, a few hundred dollars for the pH meter, and $50–100 for the pH stick.

Following this offer of proof, the trial court allowed Mr. Smith to test the equipment to see if it was in working order. Mr. Smith found the equipment to be in working order, and the court allowed him to testify that, in his opinion, the equipment was worth far more than $100.

The sole basis for the jury's determination of market value was Mr. Smith's opinion. The issue in this case is whether that opinion is a sufficient basis to support defendant's conviction, despite Mr. Smith's avowed lack of knowledge of the market value of used laboratory equipment.

It is clear that an owner of personal property may testify concerning the value of the property and that such testimony is sufficient to support a jury's determination

of value. *State v. Dominguez*, 91 N.M. 296, 573 P.2d 230 (Ct.App.1977); *State v. Zarafonetis*, 81 N.M. 674, 472 P.2d 388 (Ct.App.1970). The reason for this rule is that the owner necessarily knows something about the quality, cost, and condition of his or her property and consequently knows approximately what it is worth. *See* Annotation, *Admissibility of Opinion of Non–Expert Owner as to Value of Chattel*, 37 A.L.R.2d 967 (1954).

Mr. Smith had the same amount of knowledge about this property as any person has about his or her own property. He knew the age, the condition when stolen, the original cost, and the amount that he, as an informed buyer, would pay for each item in its condition at trial. His unfamiliarity with the actual market for used laboratory equipment merely placed him in the same position as similarly uninformed owners of property.

The jury was instructed that "market value" means the price at which the property could ordinarily be bought or sold at the time of the alleged receiving of the stolen property. *See* SCRA 1986, 14–1602. "Market value" is the equivalent of "retail price" and generally is a question of fact. *Tunnell v. State*, 99 N.M. 446, 659 P.2d 898 (1983). Mr. Smith's testimony was tantamount to an owner's opinion as to the value of the property in its condition at trial and also as to the cost of purchasing new replacement property. The jury could reasonably infer from this testimony that the price at which the property could ordinarily have been bought or sold was in excess of $100 at the time it became received stolen property. *Cf. State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978); *State v. Williams*, 83 N.M. 477, 493 P.2d 962 (Ct.App.1972).

## II. Racketeering Conviction.

Testimony at trial established that defendant and three others participated in the manufacture of methamphetamines between February and September of 1986. Testimony of two of defendant's three associates, Israel and Laura de la Rosa, indicated that defendant was the only one who knew all the steps required in the manufacturing process, and that he was in charge of all aspects of manufacturing and distributing the methamphetamines. The de la Rosas also stated that they had seen defendant manufacture methamphetamines on at least six or seven occasions. Mr. de la Rosa testified that he had seen defendant in possession of an analytical balance, a pH meter, and other laboratory equipment. Another witness testified that the equipment had been stolen from the wastewater plant in July of 1986.

Defendant's contention that his racketeering conviction is not supported by substantial evidence has several parts. Defendant first argues that the jury had to find he committed the receiving· stolen property offense in order to find that he had committed racketeering, because the jury instructions so stated. *Cf. State v. Martin*, 90 N.M. 524, 565 P.2d 1041 (Ct. App.1977) (instructions that are not objected to become the law of the case). Since he contends that there was insufficient evidence upon which to base the receiving stolen property offense, there would be insufficient evidence to support the racketeering conviction if defendant's conviction for receiving stolen property is overturned. Because the receiving stolen property conviction was supported by substantial evidence, defendant's argument on this issue is moot.

Next, defendant attacks the sufficiency of the evidence of his violation of New Mexico's Racketeering Act, NMSA 1978, Sections 30–42–1 to –6 (Repl.Pamp. 1987 & Supp.1988). Specifically, in Section 30–42–4(A), it is made unlawful for anyone who receives proceeds from a pattern of racketeering activity, in which the person has participated, to use or invest those proceeds in an enterprise. "Racketeering" means "any act which is chargeable or indictable under the laws of New Mexico and punishable for more than one year," including, among others, the offenses defendant was charged as having committed —trafficking in controlled substances by manufacture and receiving stolen property valued more than $100. *See* § 30–42–3(A)(13) & (8). Defendant claims

the evidence is insufficient to establish two elements of the unlawful activity—the use or investment of proceeds, and the existence of an enterprise. We address these elements separately.

### A. Proof of "Use or Investment" of Proceeds.

■ Defendant concedes there was evidence to support a finding that the proceeds of more than one act of manufacturing were invested in later acts of manufacturing. However, the state proceeded on the theory that the pattern of racketeering activity additionally included the act of receiving stolen goods, and the trial court's instruction required the jury to find that defendant received proceeds also from that act of receiving stolen goods and that he used or invested those proceeds in an enterprise. Under these circumstances, defendant contends that there was insufficient evidence to support his conviction. Defendant argues there was no proof that he used or invested proceeds obtained from his act of receiving stolen property.

There was testimony that defendant was in possession of the laboratory equipment, and that the pH meter and analytical balance would be useful in manufacturing or distributing controlled substances. From this testimony, the jury could have inferred that defendant used the equipment in the business of manufacturing methamphetamines.

Defendant's argument appears to be an attempt to limit the statutory definition of "proceeds" to monetary gain. We disagree with this limitation.

■ The statute prohibits "use or investment," *see* Section 30–42–4(A), which infers that the term "proceeds" is not limited to money. Common sense indicates that the proceeds of illegal activity will not always be limited to money. Rather, it includes tangible property that can be used. Therefore, we hold that "proceeds," as used in

the racketeering act, includes non-monetary proceeds. We also hold that there was sufficient proof that defendant used the non-monetary proceeds of his act of receiving stolen property, i.e., the stolen property itself, in his methamphetamine manufacturing business.

### B. Proof of an "Enterprise."

New Mexico's Racketeering Act defines "enterprise," in part, as any "group of individuals associated in fact although not a legal entity, and includes illicit as well as licit entities[.]" § 30–42–3(C). Defendant contends that there was no proof of an "enterprise" in this case, and therefore he could not be convicted of using or investing proceeds in an enterprise. He argues that the only relevant evidence was that a small group of people committed a number of identical acts of manufacturing methamphetamines. This, he contends, is insufficient to establish an enterprise as that term is used in the act. Defendant maintains that an enterprise is an association above and beyond that necessary to perform the acts that are predicate to a pattern of racketeering activity.[1]

All of defendant's arguments in support of his position are based on Eighth Circuit cases that have interpreted the federal racketeering act, 18 U.S.C. Sections 1961 to 1968 (1983) (RICO), and on other cases that have followed the Eighth Circuit's interpretation. *See Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir.1986); *United States v. Bledsoe*, 674 F.2d 647 (8th Cir.), *cert. denied sub nom., Phillips v. United States*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982); *United States v. Anderson*, 626 F.2d 1358 (8th Cir.1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); *see also Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 567 F.Supp. 1146 (D.N.J. 1983), *aff'd in part, rev'd in part*, 742 F.2d 786 (3rd Cir.1984), *cert. denied*, 469 U.S.

1. A "pattern of racketeering activity" is defined as "engaging in at least two incidents of racketeering with the intent of accomplishing any of the prohibited activities set forth in [Section 30–42–4(A)–(D)]; provided at least one of such incidents occurred after the effective date of the Racketeering Act and the last of which occurred within five years after the commission of a prior incident of racketeering." § 30–42–3(D).

1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); cf. Commonwealth v. Goodman, 347 Pa. Super. 403, 500 A.2d 1117 (1985) (holding the Pennsylvania Corrupt Organizations Act was not intended to subject ordinary criminals to heightened punishments). New Mexico's Racketeering Act is similar to RICO, and federal cases interpreting RICO provide valuable guidance to New Mexico courts interpreting our Act. State v. Johnson, 105 N.M. 63, 728 P.2d 473 (Ct.App.1986), cert. denied, 481 U.S. 1051, 107 S.Ct. 2185, 95 L.Ed.2d 841 (1987). Defendant's arguments are all based on these cases, and we address his arguments in discussing the relevant case law.

The cases cited indicate that, for purposes of RICO, an enterprise must consist of more than an organization set up to commit only the predicate acts constituting the pattern of racketeering activity. These cases suggest, as well, that the evidence needed to prove the enterprise must be different from that used to prove the pattern of racketeering. See Saine v. A.I.A., Inc., 582 F.Supp. 1299 (D.Colo.1984). The question of whether there must be more than an organization that has been set up to commit the predicate acts is only one issue presented by defendant's argument on appeal. Another issue is whether the evidence used to prove the enterprise may be different from that used to prove the pattern of racketeering. See United States v. Perholtz, 842 F.2d 343 (D.C.Cir.), cert. denied, —— U.S. ——, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). We address these issues separately.

The circuit courts are split on the requirements for establishing an enterprise. United Energy Owners Comm., Inc. v. U.S. Energy Management Systems, Inc., 837 F.2d 356 (9th Cir.1988). Most of the circuits that have considered this issue have held that a group associated only for the purpose of committing one or more types of RICO predicate acts may be an enterprise for purposes of that act. See, e.g., United States v. Mazzei, 700 F.2d 85 (2d Cir.), cert. denied, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983); United States v. Qaoud, 777 F.2d 1105 (6th Cir. 1985), cert. denied sub. nom, Callanan v. United States, 475 U.S. 1098, 106 S.Ct. 1499, 89 L.Ed.2d 899 (1986); United States v. Cagnina, 697 F.2d 915 (11th Cir.), cert. denied, 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983); United States v. Perholtz; United States v. Diecidue, 603 F.2d 535 (5th Cir.1979), cert. denied, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980). The Third and Fourth Circuits appear to agree with the Eighth Circuit. See United States v. Riccobene, 709 F.2d 214 (3rd Cir.), cert. denied sub nom., Ciancaglini v. United States, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); compare United States v. Griffin, 660 F.2d 996 (4th Cir. 1981), cert. denied sub nom., Garonzik v. United States, 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 313 (1982) with United States v. Tillett, 763 F.2d 628 (4th Cir. 1985).

The Seventh Circuit's current position is unclear. Compare United States v. Aleman, 609 F.2d 298 (7th Cir.1979), cert. denied, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed. 2d 780 (1980) (group organized to commit three home burglaries was enterprise, where burglaries were carefully planned in advance by same individuals) with United States v. Neapolitan, 791 F.2d 489, 500 (7th Cir.), cert. denied, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986) ("An enterprise must be more than a group of people who get together to commit a 'pattern of racketeering activity.'") (citing United States v. Anderson).

As to this issue, the judicial dispute concerns à disagreement over the purpose and scope of RICO. Courts that interpret the term "enterprise" to include a group associated only for the purpose of committing one or more predicate acts reject the assumption that RICO was not intended to supplant traditional conspiracy law and the conclusion that RICO was intended for use only against highly organized criminal endeavors. Compare United States v. Bledsoe (unless definition of "enterprise" requires proof of a structure distinct from the organization necessary to commit the RICO predicate offenses, RICO will simply punish the commission of two or more predicate offenses within a ten-year period)

*and United States v. Anderson,* (structure of the statute reveals a specific orientation that does not encompass radical expansion of federal conspiracy law) *with United States v. Qaoud* (RICO was meant to provide new means of combatting continuing patterns of criminal activities as well as organized crime) *and United States v. Griffin* (RICO addressed the difficulty of proving conspiracy between members of a criminal association).

■ Resolution of the first issue, then, requires us to decide what the New Mexico legislature intended in enacting our act. The state argues that the legislature intended the act to have a broad application, so that it covers situations in which a group of individuals associate only to perform predicate criminal acts. Defendant argues that the legislature intended to limit the scope of the act to cover only those situations in which the group is engaged in activities other than the predicate acts. We believe that the legislature intended the scope of the act to be broad, as urged by the state.

The act was passed in 1980, at a time when the federal courts were debating whether illegitimate as well as legitimate associations could be considered enterprises. *See United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The legislature defined "enterprise" to include both illicit and licit entities, indicating that it intended an expansive interpretation of the term. § 30–42–3(C). Furthermore, the definition of enterprise includes *any* group of individuals associated in fact, and contains no limiting language. *Id.* Finally, only two predicate acts are necessary to prove a pattern of racketeering activity, indicating that highly organized and prolific criminal entities are not the only targets of the act.

Under these circumstances, we adopt the interpretation of an enterprise that is employed by the majority of jurisdictions that have considered the issue. We believe the interpretation to be more consistent with the purpose of the act.

In our view, the alternative interpretation of an enterprise requires an impracti-cal distinction between associations or entities covered by the act and those not covered. The case law applying this interpretation has not established a working definition under which an "ordinary" group of criminals becomes "organized crime" subject to the provisions of RICO. For example, *United States v. Bledsoe* indicates that an example of an enterprise would be a group that commits a number of diverse crimes instead of just one type of crime. This definition would mean that a group associated to commit many acts of robbery would not be an enterprise, while a group associated to commit a few robberies and a few acts of receiving stolen property would be. In application, then, this interpretation has meant that a group organized to commit only one type of predicate act was immune from prosecution under RICO. *See, e.g., United States v. Bledsoe* (group that committed 159 predicate acts of securities fraud held not to be an enterprise). Such a result seems arbitrary, *see United States v. Mazzei,* and contrary to the legislative purpose in enacting the Racketeering Act.

Presumably it would be possible to establish bright-line rules for distinguishing associations or entities, using such factors as the number of participants or economic impact. However, the legislature has not indicated it wishes to restrict the scope of the Racketeering Act by enacting such requirements, and we are persuaded that the act has meaning as written, which we should apply. *Cf. State ex rel. Rodriguez v. American Legion Post No. 99,* 106 N.M. 784, 750 P.2d 1110 (Ct.App.1987) (court of appeals does not legislate).

Due to the New Mexico act's language and the problems inherent in the alternative interpretation, we decline to adopt the alternative. As the state acknowledges, however, this does not mean that proof of the requisite number of predicate acts alone is sufficient to prove the existence of an enterprise. "The existence of an enterprise at all times remains a separate element which must be proved by the Government." *United States v. Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528.

That brings us to the second issue: whether the state's proof of an "enterprise" was sufficient, since it overlapped with proof of the "pattern of racketeering activity." *See* § 30–42–3(C) and (D). Here, also, there seems to be a dispute among the circuits. *See United States v. Perholtz.* This dispute seems to arise in part from a disagreement over the meaning of a passage in *United States v. Turkette.* There, the Supreme Court said:

> In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U.S.C. § 1961 (1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.

452 U.S. at 583, 101 S.Ct. at 2528.

■ Some courts may have viewed this passage as imposing an obligation on the prosecution to prove the existence of an enterprise without reference to the proof of a pattern of racketeering activity. *See United States v. Perholtz; but see United States v. Riccobene; United States v. Griffin.* We are persuaded that the passage need not be so construed. *United States v. Perholtz; United States v. Bagnariol,* 665 F.2d 877 (9th Cir.1981), *cert. denied sub nom., Gallagher v. United States,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). Although the state must prove both the existence of an "enterprise" and a "pattern of racketeering activity," proof of these elements need not be, and often will not be, distinct and independent.

■ The enterprise is proved by (1) a common purpose among the participants, (2) organization, and (3) continuity. *See United States v. Perholtz.* Sporadic, temporary criminal alliances do not constitute an enterprise within the meaning of the act. *Id.*

■■ We believe the factors to be considered in determining the existence of an enterprise include the identity of the individuals involved, their knowledge of the relevant activities, the amount of planning required to carry out the predicate acts, the frequency of the acts, the time span between each act, and the existence of an identifiable structure within the association or entity. These factors are relevant in proving all three subelements of the existence of an enterprise. In proving a pattern of racketeering activity, the state may rely on some or all of the same factors. That does not mean that the existence of an enterprise is necessarily established by proof of a pattern of racketeering activity. However, in some cases, the existence of the enterprise may be inferred from proof of the pattern of racketeering activity. *See United States v. Perholtz; but cf. United States v. Neapolitan* (in those cases in which the enterprise is alleged to be an illegal association in fact, proof of a conspiracy is "not sufficient to allow an inference of the existence of" an enterprise). 791 F.2d at 500.

■ We agree that proof of an organization is essential to establishing the elements of an enterprise. *See United States v. Griffin.* However, the purpose of the association may be as simple as earning money from repeated illegal acts. *United States v. Cagnina.* This is such a case.

■ Here, the evidence demonstrated that the same four individuals were involved in the manufacturing process. They participated in the process at one-to two-week intervals, for a total of six or seven

incidents of manufacturing methamphetamines. The operation required frequent trips to Albuquerque to buy supplies, and each participant needed to have knowledge of an intricate manufacturing process. One participant testified that he felt like defendant's partner and that defendant was in the business of manufacturing and selling methamphetamines. On these facts, we have no difficulty concluding that defendant and the other individuals were engaged in an enterprise and that the state's evidence was sufficient to establish that element of the crime of racketeering. *See United States v. Mazzei.*

### III. Conspiracy to Racketeer Conviction.

Defendant has contended that if this court agrees there was insufficient evidence to support his conviction for receiving stolen property, then there was also insufficient evidence to support his conviction for conspiracy to racketeer. Under the instructions for this offense, the jury was required to consider the act of receiving stolen property, as well as multiple acts of trafficking. Because there was sufficient evidence to support the conviction for receiving stolen property, this argument is moot.

### IV. Merger of Conspiracy Counts.

■ Defendant raised this issue in an untimely motion to amend his docketing statement. However, this is a double jeopardy issue that may be raised at any time and we address it. *See State v. Edwards,* 102 N.M. 413, 696 P.2d 1006 (Ct.App.1984).

Defendant was convicted of conspiracy to traffic by manufacture and of conspiracy to racketeer. The sentences for each conviction were ordered to run concurrently with each other and with defendant's sentence for the substantive offense of racketeering. Defendant argues that under *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), he could have been convicted of only one conspiracy, because the conviction for trafficking by manufacture is necessarily included in the offense of conspiracy to racketeer.

In *Ball,* the Supreme Court analyzed two statutory offenses, found that they were the same and were aimed at preventing the same evil, and concluded that Congress did not intend to impose dual convictions for the same act. *See State v. Srader,* 103 N.M. 205, 704 P.2d 459 (Ct.App.1985). The Court applied the "same elements" test, which involves a comparison of the statutory elements of each crime to determine whether they are identical. For purposes of a *Ball* analysis, therefore, we examine only the statutory elements of the two crimes and do not consider the facts of the case. *Id.* Application of that analysis in this case shows that the crimes are not identical. Conspiracy to traffic by manufacturing can be proved by demonstrating one instance of manufacturing, while conspiracy to racketeer requires a showing of an enterprise and at least two predicate offenses. *Compare* NMSA 1978, §§ 30–28–2 (Repl.Pamp.1984) *and* 30–31–20 (Repl. Pamp.1987), *with* §§ 30–42–4 *and* 30–42–3(C), (D).

Since the statutory elements of the two offenses are clearly different, defendant's only course is to argue that, under the facts of this case, conspiracy to traffic was a lesser included offense of conspiracy to racketeer, and that the two offenses should merge. Under these circumstances, running the sentences concurrently vitiates any double jeopardy issues that may be raised. *See State v. Srader.* To the extent that defendant may be arguing that *Ball* requires a different result, we disagree. Defendant did not suffer cumulative punishment for the two conspiracies of which he was convicted. Therefore, we need not decide whether the offenses merged under the facts of this case.

CONCLUSION.

Based on the foregoing, defendant's convictions are affirmed.

IT IS SO ORDERED.

FRUMAN and APODACA, JJ., concur.