This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **NO. 28,257**

**HAL RAYMOND SNIDER, II,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Gary L. Clingman, District Judge**

Gary K. King, Attorney General
Francine A. Chavez, Assistant Attorney General
Santa Fe, NM

for Appellee

Templeman and Crutchfield
C. Barry Crutchfield
Lovington, NM

for Appellant

## MEMORANDUM OPINION

**FRY, Chief Judge.**

Defendant appeals his convictions of two counts of larceny, contrary to NMSA 1978, Section 30-16-1 (1987) (amended 2006).  Defendant argues that, as

to both counts, there was insufficient evidence to support the value element of the offense, and as to one count, there was insufficient evidence to support a jury finding that he stole the property. For the following reasons, we disagree with Defendant's assertions and affirm his convictions.

**BACKGROUND**

Following a jury trial, Defendant was convicted of two counts of larceny for the theft of a number of pieces of oil field equipment that had been stolen from two oil fields in southern New Mexico between March and July 2005. During this time frame, Defendant and an accomplice had allegedly stolen a large amount of oil field equipment from various wells around the region. Following the thefts, Defendant and his accomplice apparently cleaned the equipment and then Defendant sold the equipment to local businesses. At some point, one of Defendant's customers discovered that he had purchased stolen equipment and notified the police.

During the ensuing investigation, a number of items that belonged to Basic Energy, Weatherford Services, WRH, Inc., and ABC Tool Rental, all oil field equipment supply companies, were traced back to Defendant. These items had all been stolen sometime between July 1 and 5, 2005. While both Basic Energy and Weatherford identified a large number of tools as their property, each company

was only able to positively identify a small number of the stolen items due to the lack of serial numbers or other identifying marks on the remaining items. Weatherford was able to conclusively determine that two pieces of equipment, an accelerator, or a jar, and a bumper sub were its property due to serial numbers on the devices. Basic Energy was able to conclusively determine that some recovered BJ tubing elevators were its property due to serial numbers on the equipment.

Based on the evidence obtained during the investigation, Defendant was charged with four counts of larceny for the theft of items valued greater than $2500 but less than $20,000. The jury convicted on the counts related to Basic Energy and Weatherford, but the trial court declared a mistrial on the counts related to WRH and ABC Tools. Defendant appeals, arguing that there was insufficient evidence of the value of the items he was convicted of stealing and that, as to Basic Energy, there was insufficient evidence that he stole any property.

**DISCUSSION**

"In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. This review "requires analysis of whether direct or circumstantial substantial evidence exists

3

and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We determine whether a rational [fact finder] could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). We do "not weigh the evidence or substitute [our] judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789.

**Basic Energy's Equipment**

For the theft from Basic Energy's oil field, Defendant was charged with and convicted of larceny pursuant to Section 30-16-1 for stealing property valued in excess of $2500. In order for the jury to find Defendant guilty, the jury was required to find that Defendant "took and carried away oil field tools belonging to [Basic Energy], which had a market value over $2500." Defendant argues that there is a "total lack of any evidence" regarding the market value of the stolen property and thus, that the jury could not have found that he stole property valued in excess of $2500. In support of this contention, Defendant notes that the only

stolen property that was positively identified as belonging to Basic Energy consisted of the BJ tubing elevators, which had identifying serial numbers on them. Defendant contends that while there was testimony that the value of all of the equipment stolen from Basic Energy was approximately $15,000, there was no testimony regarding the actual market value of the BJ tubing elevators that were identified as belonging to Basic Energy. Thus, Defendant argues, there was insufficient evidence for the jury to conclude that the tools Defendant stole from Basic Energy had a market value over $2500. We disagree.

While Defendant focuses on the lack of evidence regarding the specific value of the BJ tubing elevators, Defendant fails to acknowledge that he was charged with stealing much more equipment than just the BJ tubing elevators. In fact, Defendant was accused of stealing approximately $9500 worth of equipment from Basic Energy. The jury heard testimony from Sisk, Defendant's accomplice, that the pair had stolen oil field equipment sometime around July 2, 2005. The jury then heard testimony from Julian Carillo, a Basic Energy employee, that a number of tools were stolen from an oil field that he was in charge of sometime between July 1 and July 5, 2005. Mr. Carillo testified that a set of rod tongs, four pipe wrenches, a number of hammer wrenches, a PAW valve, a key to the PAW valve, and a set of BJ tubing elevators were all taken. Carillo further testified that

5

the value of the stolen items was "[a]round $15,000 for everything back in 2005" and that the value of the "elevators like those are somewhere around $1200."[1] In addition, Mr. Roberts, the owner of a tool service who works with auction companies to ascertain market value of oil field equipment, testified that the value of the rod tongs alone was between $8000 and $10,000 and that because of the rarity of oil field equipment, the value of used equipment parallels that of new equipment.

That Basic Energy was only able to positively identify the BJ tubing elevators as its property, after the theft does not alter the fact that a number of other items were stolen at the same time. Because the theft of the BJ tubing elevators was conclusively linked to Defendant, and because the BJ tubing elevators were stolen at the same time as the rest of Basic Energy's tools and equipment, the jury could reasonably infer that Defendant was responsible for the theft of all of the equipment stolen over the applicable time frame. Thus, the value of all of the property that was stolen could properly be attributed to Defendant, not just the value of the BJ tubing elevators.

---

[1]Despite Mr. Carillo's unequivocal valuation of the elevators, Defendant curiously argues that "Mr. Carillo did not provide any value of specific equipment and of particular note, provided no value of BJ [t]ubing [e]levators."

6

Defendant next argues that there was testimony regarding only the replacement value of the property, not the fair market value as required by the jury instructions. Thus, Defendant contends, the jury was forced to speculate about the fair market value of the stolen property, and speculation is not a permissible basis for a conviction. We are not persuaded.

In *State v. Hughes*, 108 N.M. 143, 145-46, 767 P.2d 382, 384-85 (Ct. App. 1988) we noted that "[i]t is clear that an owner of personal property may testify concerning the value of the property and that such testimony is sufficient to support a jury's determination of value." We explained that "[t]he reason for this rule is that the owner necessarily knows something about the quality, cost, and condition of his or her property and consequently knows approximately what it is worth." *Id.* at 146, 767 P.2d at 385. Based on this rule, we held that a property owner's testimony that his property had a value well over $100, based on the owner's knowledge of the replacement cost of the property, was sufficient to support the valuation element of larceny because "[t]he jury could reasonably infer . . . that the price at which the property could ordinarily have been bought or sold was in excess of $100 at the time it became received stolen property." *Id.* In so holding, we also explained that market value "means the price at which the property could ordinarily be bought or sold" and that market value "is the

7

equivalent of 'retail price.'" *Id.* Applying this rule in *State v. Barr*, we concluded that a homeowner's testimony regarding the value of property stolen from her was sufficient to support a conviction because "testimony of the purchase price of consumer goods, when coupled with information about the age and condition of the goods, is sufficient by itself to allow a jury to draw reasonable inferences about the present market value of the items." 1999-NMCA-081, ¶ 30, 127 N.M. 504, 984 P.2d 185.

Here, the jury heard testimony that it would cost $15,000 to replace all of the equipment that Defendant stole. The jury also heard testimony that there was not a lot of used equipment available on the market at the time of the theft, that the replacement value paralleled the value of used equipment, that the rod tongs stolen from Basic Energy alone had a value of approximately $10,000, and that the value of the BJ tubing elevators was approximately $1200. Based on this evidence, the jury was able to infer that the market value of the equipment stolen from Basic Energy exceeded $2500, as required to convict Defendant.

Finally, Defendant argues that "the evidence presented in this matter defies logic" because while Mr. Carillo testified that the property was stolen sometime between July 1 and July 5, Mr. McInroe, one of the individuals who purchased the stolen equipment from Defendant, testified that he had purchased the BJ tubing

elevators prior to July 1. According to Defendant, it was impossible for him to have stolen property from Basic Energy after July 1 that had been purchased by McInroe prior to July 1.

On review for substantial evidence, we consider only whether substantial evidence supports the verdict, not whether we would reach a different result upon review of the evidence. *See Mora*, 1997-NMSC-060, ¶ 27. To the extent that there is some conflict between the date that Mr. McInroe testified he purchased the property from Defendant and the date that Defendant stole the property, resolution of this conflict is solely the province of the jury, not of this Court on appellate review. *See State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) (noting that we "neither reweigh the evidence nor substitute [our] judgment for that of the jury"). Because there was evidence presented that the property was stolen between July 1 and July 5, the jury was free to reject the testimony regarding the date that the property was purchased and defer to the testimony of Defendant's accomplice, who testified that they stole equipment sometime around July 2, the testimony of the Basic Energy employee that the equipment was stolen between July 1 and 5, and the testimony of the deputy who investigated the crime who testified that the equipment was stolen between July 1 and July 5.

9

Because substantial evidence supports the jury's determination that Defendant stole property valued over $2500 from Basic Energy, we affirm Defendant's conviction on this count.

**Weatherford Services' Equipment**

Defendant makes the same arguments with respect to his conviction for stealing oil field equipment from Weatherford that he made regarding the Basic Energy theft. Defendant contends that because only one item was positively identified as Weatherford's, only that item can be used for purposes of calculating the value of the stolen items, and there was insufficient evidence of the market value of that one item. We disagree.

Mr. Balog, an employee of Weatherford, testified that equipment was stolen from a Weatherford worksite sometime between July 2 and July 5, 2005. Balog testified that an accelerator, an overshot, spiders and slips, top bushing, a bumper sub, and some crossover subs were all stolen during this time frame. Because the serial numbers had been ground off of most of the equipment, the only items that Weatherford was positively able to identify when it recovered the property were the accelerator and the bumper sub.[2]

Balog testified that the replacement cost of all of the equipment that was stolen during this time frame was approximately $27,000, and that due to the damage that had been done to the accelerator when the serial number was removed,

---

[2]While counsel contends that only one item could be positively identified as Weatherford's, Balog unequivocally testified that both an accelerator and a bumper sub were positively identified as Weatherford property.

11

the company paid approximately $6800 to repair the device. Defendant again argues that because the only testimony presented was the replacement cost of all the equipment, and because only the accelerator and the bumper sub could be positively identified as Weatherford's equipment when the property was recovered, there is insufficient evidence that the market value of the stolen equipment exceeded $2500.

Defendant again assumes that he can only properly be convicted of stealing property that Weatherford was able to positively identify as its own after the property had been recovered. In making this argument, Defendant ignores the permissible inference that if Defendant stole the identifiable property that went missing around July 2, he also stole the unidentifiable equipment that went missing at the same time. Defendant's argument that a property owner must be able to positively identify a piece of property before the thief can be convicted of stealing it is unsupported by the law and defies logic. Such a rule would preclude the conviction of any individual who steals property that is not marked by a serial number. Similarly, the rule Defendant seeks to apply would preclude conviction for the theft of property that is not recovered because an owner would be incapable of identifying property that is not recovered.

Thus, for purposes of determining the value of the stolen property, the jury was permitted to consider both the items that were positively identified as belonging to Weatherford as well as the items that were stolen from Weatherford that were either not marked for identification or that had the identifying marks removed. The fact that the replacement value of all of this property was $27,000 was enough to allow the jury to infer that the market value of the used equipment was greater than $2500. In addition, the fact that Weatherford paid nearly $7000 to repair the accelerator allowed the jury to make the reasonable inference that the value of the accelerator alone exceeded $2500. Thus, substantial evidence supports the jury's determination that the equipment stolen from Weatherford had a market value greater than $2500. **CONCLUSION**

For the foregoing reasons, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

13

_____

**MICHAEL E. VIGIL, Judge**