1999-NMSC-008

974 P.2d 661

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Eutimio SALGADO, Defendant–
Appellant.**

No. 23,939.

Supreme Court of New Mexico.

Jan. 26, 1999.

Timothy M. Padilla & Associates, Adam Kurtz, Albuquerque, for Appellant.

Hon. Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, for Appellee.

## OPINION

SERNA, Justice.

{1} Eutimio Salgado, Defendant–Appellant, was convicted following a jury trial of first degree murder and sentenced to life imprisonment. He appeals pursuant to Rule 12–102(A)(1) NMRA 1999 (appeals from sentence of life imprisonment taken to the Supreme Court). Defendant argues that the trial court erred by denying his motion to exclude hearsay statements, which he contends violated his constitutional right of confrontation, and by denying his motions to suppress identification testimony. Defendant also asserts that there was insufficient evidence to support his conviction. We affirm Defendant's conviction.

### Facts and Background

{2} On the evening of August 21, 1995, Harold McManaway was standing in the front yard of the Albuquerque home of Michelle Romero, his girlfriend. Michelle's mother, Lorraine Romero, and Michelle's daughter were also in the yard at the time. Michelle and Lorraine testified that a man walked toward Harold, and that Harold appeared to greet the man with his hand extended. Michelle testified that she heard Harold greet the man with the words, "Hey, Timo, what's up?" Lorraine testified that she heard Harold said, "Hey, Primo." Following this greeting, the man shot Harold repeatedly.

{3} Harold then entered Michelle's home and collapsed in a bedroom. Michelle re-

peatedly screamed that "Timo" shot Harold, and proceeded to call 911. The first police officer to arrive, John Koch, found Harold unconscious. While he was cutting Harold's shirt, Harold sat up and, in response to Officer's Koch's question, "Who shot you?" said, "Timo shot me." Lorraine also testified that Harold stated, "Timo shot me."

{4} Annette Smith, Harold's ex-girlfriend, testified that Harold knew Defendant for at least eleven years, and that Harold occasionally greeted Defendant by saying, "Hey, Timo." Defendant's mother lived approximately one-half mile from Michelle's house, and Defendant was present at his mother's residence on the evening Harold was shot.

## Discussion

### Did the Trial Court Err by Admitting Hearsay Statements?

{5} This Court reviews the trial court's determination of whether testimony is within exceptions to the hearsay rule for an abuse of discretion. *See State v. Ross*, 1996-NMSC–031, 122 N.M. 15, 20, 919 P.2d 1080, 1085. Defendant objects to the admission of Harold's statements, "Hey, Timo, what's up?" and "Timo shot me," arguing that the admission of these hearsay statements violates his right of confrontation. *See* U.S. Const. amend. VI; N.M. Const. art. II, § 14. The trial court found Michelle's testimony that Harold said "Hey, Timo, what's up?" admissible as a present sense impression exception, Rule 11–803(A) NMRA 1999, to the hearsay rule. Rule 11–803(A) defines the present sense exception as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

{6} Defendant contends that this testimony was inadmissible, relying on *State v. Case*, 100 N.M. 714, 718, 676 P.2d 241, 245 (1984), because the shooter's identity could not be verified by the witness. In *Case*, we held that the trial court did not abuse its discretion by excluding a witness' identification testimony where the identification was based on the absent declarant's brief sighting of an individual, and the witness looked up

too late to verify the identification. *Id.* at 718, 676 P.2d at 245. In the present case, however, Michelle herself saw the shooter, described him, and identified him in a photograph array, supporting her testimony that Harold recognized the shooter as "Timo." Further, in *Case*, we upheld the trial court's decision and stated that the trial court has "broad discretion to assess the reliability of the statement made by a witness who does not testify" and that "[a]bsent a clear abuse of that discretion, reversal is not appropriate." *Id.* at 718, 676 P.2d at 245; *see also State v. Perry*, 95 N.M. 179, 181, 619 P.2d 855, 857 (Ct.App.1980).

{7} In *Perry*, the Court of Appeals discussed three considerations:

First, the statement must be made while the event or condition is being perceived by the declarant or immediately thereafter.... Second, ... [t]he admissibility of the statement will depend upon the trial court's view of the type of case, the availability of other evidence, the verifying details of the statement and the setting in which the statement was made. Third, the statement must be one which describes or explains the event or condition.

95 N.M. at 180, 619 P.2d at 856. Further, "[i]f the [declarant] was unavailable, the witness having heard the statement made by the declarant could be cross-examined concerning his [or her] perception of the event or condition sufficiently to enable the trial court to put a fair value upon the declarant's statement." *Id.*

{8} Harold said, "Hey, Timo, what's up?" while he was perceiving an individual approaching him, "negat[ing] the probability of deliberate or conscious misrepresentation." *Perry*, 95 N.M. at 180, 619 P.2d at 856. Defendant argues that Harold's statement is not "reliable because he was shot and killed immediately thereafter" and because the time frame was too short. The State counters with the fact that Harold had an adequate opportunity to view the shooter from a distance of a few feet. Unlike the witness in *Case*, who did not observe the victim but only heard the declarant say she saw the victim, Michelle also saw the shooter, identified him in a photo layout, and was available for cross-

examination. *See Case,* 100 N.M. at 718, 676 P.2d at 245. Lastly, Harold's statement explains the event: he was greeting the shooter while extending his hand towards him. Applying an abuse of discretion standard, we hold that the trial court did not err in admitting this testimony.

{9} The trial court admitted Harold's statement, "Timo shot me," through Officer Koch's and Lorraine's testimony under the excited utterance exception to the hearsay rule.[1] Under Rule 11–803(B) NMRA 1998, a hearsay statement is admissible if it "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The trial court properly characterized Harold's statement as an excited utterance because he made the statement relating to the startling event of being shot while clearly under the stress of excitement caused by the shooting.

{10} Defendant argues that these witnesses' testimony was not reliable because it is based on an "initial hearsay statement of identification" and that Harold may have been relying upon "what he undoutedly [sic] heard Michelle Romero screaming, 'Timo shot him.'" Because Harold apparently based these statements on his initial identification of the individual that approached him, we disagree with Defendant's unsupported assertion that Harold was relying upon Michelle's statements. Further, Defendant argues that Harold "was so severly [sic] impaired by his mortal wounds that he likely was not in a conscious enough state to know who shot him," and that Harold's "last words were the result of an unconscious and· involuntary physical and verbal reaction." Using

an abuse of discretion standard of review, we also reject this argument.

{11} Because Harold made the statement, "Timo shot me," to Officer Koch close in time to the shooting and because he was unconscious for at least part of that time, there was little opportunity for Harold to fabricate the identification. When a victim, regaining consciousness, is groggy and unfocused, this "actually supports admission of the statements because [it] suggest[s] that the victim was in no mental state to fabricate a story." *State v. Lopez,* 1996–NMCA–101, ¶ 32, 122 N.M. 459, 926 P.2d 784, *cert. denied,* 122 N.M. 279, 923 P.2d 1164 (1996). Harold's statement directly related to the startling event of the shooting, and, severely wounded, he was clearly still under the stress of the event. *See State v. Bonham,* 1998–NMCA–178, ¶ 8, 970 P.2d 154 (N.M.Ct.App.1998) ("conclud[ing] that the trial court did not abuse its discretion in finding that Victim's statements, to [police] officers, concerning his attacker were made under the stress of the attack, and were therefore excited utterances"). Thus, the trial court did not abuse its discretion admitting this testimony.

## Did the Admission of Hearsay Statements Violate Defendant's Right of Confrontation?

{12} Defendant argues that the trial court's admission of Harold's statements violated his right of confrontation. *See* U.S. Const. amend. VI; N.M. Const. art. II, § 14. The question of whether the admission of hearsay evidence violates the Confrontation Clause is a question of law reviewed de novo. *Ross,* 122 N.M. at 22, 919 P.2d at 1087. "[T]he Confrontation Clause permits admission of a non-available declarant's hearsay

1. Defendant argues that the testimony was admitted erroneously under Rule 11–804(B)(2) NMRA 1999, which states that a hearsay statement is admissible if the declarant is unavailable and the statement was "made by [the] declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death." Harold was clearly unavailable and mortally wounded when he made the statement that Timo was the shooter. However, the trial court specifically admitted Officer Koch's testimony under the excited utterance

exception, though it did not specify under which rule it was allowing Lorraine's testimony. The testimony is the same for both witnesses: Harold said that Timo shot him. For this reason, we assume the trial court admitted Lorraine's testimony under the excited utterance exception as well, and we therefore do not address the evidentiary and confrontation clause issues as they apply to the dying declaration exception. *See State v. Beachum,* 83 N.M. 526, 527, 494 P.2d 188, 189 (Ct.App.1972) ("A decision of the trial court will be upheld if it is right for any reason.").

statement if it falls within a 'firmly rooted exception' to the hearsay rule." *Id.* at 23, 919 P.2d at 1088 (quoting *Idaho v. Wright*, 497 U.S. 805, 815, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). An exception is firmly rooted if it has been established historically and courts have widely accepted it. *Ross*, 122 N.M. at 25, 919 P.2d at 1090. "If the disputed statement does not fall within a firmly rooted hearsay exception, then there must be 'particularized guarantees of trustworthiness' equivalent to those associated with a firmly rooted exception." *Id.* at 23, 919 P.2d at 1088 (quoting *Wright*, 497 U.S. at 815, 110 S.Ct. 3139). Analyzing whether the statements, under the totality of surrounding circumstances, were supported by particularized guarantees of trustworthiness, we consider "four factors leading to unreliability: (1) ambiguity; (2) lack of candor; (3) faulty memory; and (4) misperception." *Id.* at 24, 919 P.2d at 1089.

{13} We first address whether the present sense impression exception, under which the trial court admitted Michelle's testimony that Harold said "Hey, Timo," is a firmly rooted hearsay exception. Under our rules, there must be a close proximity in time between the event and the statement. *See* Rule 11–803(A); *Perry*, 95 N.M. at 180, 619 P.2d at 856. By limiting the present sense impression exception in time, we believe that reliability is enhanced. *See State v. Brown*, 618 So.2d 629, 633 (La.Ct.App.1993) ("The exception at issue literally and narrowly interpreted, provides for sufficient indicia of reliability."). This exception is also contained within the Federal Rules, Fed.R.Evid. 803(1), and appears to be widely accepted. *See State v. Pickens*, 346 N.C. 628, 488 S.E.2d 162, 171 (N.C.1997) (holding that the present sense impression exception is firmly rooted); *Brown*, 618 So.2d at 633 (same). *But see People v. Cook*, 159 Misc.2d 430, 603 N.Y.S.2d 979, 984 (Sup.Ct.1993) (concluding that the present sense impression exception is not firmly rooted, in part because the New York judiciary had accepted this exception only a few months earlier and, thus, there was no "longstanding judicial and legislative experience"), *aff'd*, 220 A.D.2d 522, 632 N.Y.S.2d 193 (1995). However, for purposes of the present case, we need not decide whether the present sense impression exception is firmly rooted because there are particularized guarantees of trustworthiness attending Harold's statement.

{14} For purposes of this case, we assume without deciding that the exception is not firmly rooted. Thus, we analyze whether, under the totality of circumstances, the statement was supported by particularized guarantees of trustworthiness. We consider ambiguity, lack of candor, faulty memory, and misperception, which may indicate unreliability. *Ross*, 122 N.M. at 24, 919 P.2d at 1089. Harold stated, "Hey, Timo," unambiguously specifying a particular individual by calling him by name. Michelle testified that Harold appeared to recognize and know the shooter, because he walked towards him with his hand extended as he greeted him. Annette Smith testified that Harold knew Defendant for approximately eleven years, and that Harold occasionally greeted Defendant by saying, "Hey, Timo," supporting the conclusion that he was able to recognize Defendant and did not misperceive the identity of the individual. Finally, Harold made the statement while the events were occurring and while he was observing the approaching man, negating the possibility of faulty memory or lack of candor. We conclude that Harold's statement is supported by particularized guarantees of trustworthiness; thus, the trial court's admission of the statement did not violate Defendant's right of confrontation.

{15} The trial court admitted Officer Koch's and Lorraine's testimony regarding Harold's statement naming Timo as the man who shot him under the excited utterance exception. "An excited utterance is admissible as an exception to the general rule excluding hearsay because it is assumed that a startling event renders the observer incapable of reflection and fabrication of a response." *Lopez*, 1996–NMCA–101, ¶ 29, 122 N.M. 459, 926 P.2d 784. The Court of Appeals has noted, and we agree, that this exception to the hearsay rule is firmly rooted, and thus, reliability may be inferred. *Id.* (citing *White v. Illinois*, 502 U.S. 346, 355, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)); *see*

*also Williams v. State,* 714 So.2d 462, 465 n. 3 (Fla.Dist.Ct.App.1997) ("[W]e have exhaustively researched this issue and find that the excited utterance is uniformly considered a firmly rooted exception to the hearsay rule."), *review denied,* 717 So.2d 542 (Fla. 1998). Because we infer the reliability of the excited utterance exception, the trial court's admission of these statements did not violate Defendant's right of confrontation.

### Did the Trial Court Err in Denying Motions to Suppress In– and Out–of–Court Identifications?

 {16} "The appropriate standard of appellate review of rulings on suppression motions is whether the law was correctly applied to the facts, viewing them in the manner most favorable to the prevailing party[,]" and drawing "all reasonable inferences in support of the court's decision." *State v. Esguerra,* 113 N.M. 310, 313, 825 P.2d 243, 246 (Ct.App.1991). Defendant argues that the photograph array and presentation procedure was impermissibly suggestive, and that the trial court erred in denying his motions to suppress Michelle's out-of-court and in-court identifications, and Lorraine's out-of-court identification. We apply a two-part test to determine whether an out-of-court photographic identification is admissible. First, we must determine "whether the photo array was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification' and, if so, 'under the totality of the circumstances,' whether the identification is nonetheless reliable." *State v. McGruder,* 1997–NMSC–023, ¶ 34, 123 N.M. 302, 940 P.2d 150 (quoting *State v. Clark,* 104 N.M. 434, 439, 722 P.2d 685, 690 (Ct.App.1986)).

 {17} "[T]he size of the array, the manner of its presentation by the officers, and the details of the photographs themselves" should be considered when a court determines whether a photographic identification was impermissibly suggestive. *United States v. Sanchez,* 24 F.3d 1259, 1262 (10th Cir.1994). Defendant argues that the array, which consisted of six photographs, was too small and that his expert testified that only two looked like Defendant, further reducing the total to two. "[C]ourts have held that a photo array with as few as six pictures is not per se unconstitutional," and that the number of photographs affects the weight of any irregularities in the array. *Sanchez,* 24 F.3d at 1262–63. The court in *Sanchez,* also analyzing a six picture array, noted that "[t]he lower the number of photographs used by officers in a photo array, the [more closely] the array must be scrutinized for suggestive irregularities." *Id.* at 1263. The *Sanchez* court ultimately concluded that the array was not impermissibly suggestive. *Id.*

 {18} In the present case, the trial court noted that all six individuals in the photographs looked very similar, that they all had the same coloring, hairstyles, and facial hair, and that they appeared to be of the same ethnic status and age. As a result, the trial court concluded that the array was not impermissibly suggestive. *See Clark,* 104 N.M. at 439, 722 P.2d at 690 (rejecting defendant's argument that he is "clearly older" than others in a nine photograph array and that he is the only smiling subject; noting that all were photographs of white males about the same age as defendant; holding that the array was not impermissibly suggestive).

{19} Defendant contends that the witnesses were looking for a specific person named "Timo," which made them both more eager to pick a photograph from the array. However, the detective told the witnesses that the assailant may or may not be in the array, and Michelle and Lorraine testified that they each understood that the assailant's photograph may not have been included in the array.

 {20} Defendant asserts that the detective improperly told Michelle that she correctly identified the person named "Timo," which then "tainted" all subsequent identifications. Michelle chose Defendant's photo before any remarks were made by the detective about "Timo." The Court of Appeals rejected a similar argument in *Clark,* holding that although the detective and grandmother of the victim both hugged her after she selected the defendant's photo, the "record is devoid of any suggestions, verbal or physical,

made during the showing of the photo array. With this evidence, we find nothing impermissibly suggestive of the procedure utilized and find defendant's argument without merit." *Clark*, 104 N.M. at 440, 722 P.2d at 691. We hold the same to be true in the present case.

{21} Finally, Defendant argues that it was impermissibly suggestive for another detective to review the photograph array with Michelle before she testified at the grand jury. The detective testified that the purpose of this review was to refresh Michelle's memory, constituting proper trial preparation. *See United States v. Danzey*, 594 F.2d 905, 916 (2d Cir.1979) (noting that "a prosecutor has a duty again to interrogate a witness before trial to make certain that the witness's testimony is going to stand up"). We agree, and reject Defendant's contention.

{22} The court properly determined that the identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Even if we were to hold that the procedure was impermissibly suggestive, the totality of the circumstances support the reliability of the identifications. Although Michelle was not completely definite and unequivocal in either her out-of-court or in-court identifications, she did give a description of the shooter, chose his photograph from the array, and identified him again in court. Michelle saw the shooter approach, she was approximately ten feet from him, and she had at least ten seconds to see him. She gave an accurate description of Defendant and correctly stated that he had a small gun. Michelle testified that she got a good look at the shooter because she was standing close to him, and she identified him in court as the person she saw shoot Harold. Similarly, Lorraine was approximately ten feet away and had an opportunity to see the shooter.

{23} We hold that the photograph array procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Thus, the trial court properly allowed Michelle's out-of-court and in-court identifications of Defendant, and Lorraine's out-of-court identification of Defendant. *See Clark*, 104 N.M. at 440, 722 P.2d at 691 (upholding trial court's decision to allow in-court identification after determining that the photograph array was not impermissibly suggestive).

### Did the State Introduce Sufficient Evidence that Defendant Killed Harold?

{24} Finally, Defendant argues that Michelle's in-court testimony was insufficient to establish that Defendant killed Harold. Defendant contends that her in-court testimony was based upon her recollection of photograph number three, rather than her recollection of the assailant.

{25} "[T]he test to determine the sufficiency of evidence in New Mexico ... is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988).

> In reviewing for sufficient evidence to support a conviction, we apply a time-honored, three-part test:
>
> 1) that substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) that on appeal, all disputed facts are resolved in favor of the successful party, with all reasonable inferences indulged in support of the verdict, and all evidence and inferences to the contrary discarded; and 3) that although contrary evidence is presented which may have supported a different verdict, the appellate court will not weigh the evidence or foreclose a finding of substantial evidence.

*State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776 (quoting *State v. Lujan*, 103 N.M. 667, 669, 712 P.2d 13, 15 (Ct.App.1985)).

{26} The State provided testimony that Harold was acquainted with Defendant for over eleven years and referred to him as "Timo." The trial court properly admitted testimony that Harold said, "Hey, Timo,

what's up?" and "Timo shot me." The State provided evidence that Defendant was in the neighborhood in which Harold was shot around the time of the shooting. Finally, Michelle identified Defendant as the assailant. Thus, viewing the evidence in the light most favorable to the verdict, we conclude that the evidence supports Defendant's conviction.

## Conclusion

{27} Michelle's testimony that Harold said "Hey, Timo, what's up?" which the trial court properly admitted as a present sense impression exception, was supported by particularized guarantees of trustworthiness and did not violate Defendant's right of confrontation. The trial court properly admitted Officer Koch's and Lorraine's testimony as excited utterances; because an excited utterance is a firmly rooted exception to the hearsay rule, the trial court's admission of these statements also did not violate Defendant's right of confrontation. Because the photograph array procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, the trial court properly allowed Michelle and Lorraine's out-of-court and Michelle's in-court identifications of Defendant. Defendant's conviction is supported by substantial evidence. For these reasons, we affirm Defendant's conviction.

{28} **IT IS SO ORDERED.**

MINZNER, C.J., and BACA, FRANCHINI and MAES, JJ., concur.

