This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                                                      **NO. 29,093**

**JEFFREY WILLIAMS,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

       While on patrol late one evening, a police officer observed a pickup truck parked at a carwash with its engine running, headlights on, and stereo playing.  The

officer approached the pickup, knocked on the window, and received no response. Unable to see through the heavily-tinted windows, he opened the unlocked driver's side door and observed Defendant Jeffrey Williams slumped over the wheel. An investigation ensued, and Defendant was eventually arrested and charged with DWI.

Defendant filed a motion to suppress, which was denied by the district court, and subsequently entered a conditional guilty plea. On appeal, Defendant argues the court improperly applied the community caretaker doctrine to the facts of his case. We disagree. The district court's findings of fact are supported by substantial evidence and, likewise, because the court correctly applied the law to those facts, we affirm.

**BACKGROUND**

Defendant filed his motion to suppress on August 15, 2008. In it, he quoted the arresting officer's statement of probable cause and argued that the encounter leading up to his arrest was a criminal investigation unsupported by reasonable suspicion or probable cause. In the statement referenced by Defendant, the arresting officer described the encounter:

[On March 3, 2008, at 11:53 p.m.,] I observed a suspicious vehicle parked on the west side of [the] carwash. Upon contact with the [vehicle] I approached the vehicle and the truck had the engine running. I opened the truck door and observed a . . . male passed out behind the wheel of the truck. I tried to wake the driver but the driver was very incoherent at first. I then tried two more times to wake the driver[,] finally on my third try the driver woke up and looked at me with a dazed [look] on his face[,] almost like I had surprised him. I asked the driver what his name

2

was [and] he stated it was Jeffrey Williams. I asked [Defendant] to step out of the truck and come to the front of my patrol car. I then asked [Defendant] if he would agree to do [field] sobriety tests for me[. Defendant] stated yes. I observed a[n] open bottle of Bud Light in the middle console when [Defendant] stepped out of the truck.

Similarly, the citation issued to Defendant stated, "Suspicious vehicle on side of carwash. Truck running[, d]river passed out behind the wheel." From this narrative, Defendant concluded he was the subject of a criminal investigation at the time the arresting officer opened the pickup truck's door. Defendant argued that because the arresting officer had no reasonable suspicion to believe a crime had been or was being committed, he was illegally seized, and the court was required to suppress any evidence gathered after the stop.

The State argued that the arresting officer was not required to possess reasonable suspicion or probable cause. Despite being drawn to the parking lot by a "suspicious vehicle," the officer was still acting as a community caretaker when he opened the door and saw Defendant slumped over the wheel. "The defense claiming that [the officer] observed a 'suspicious vehicle' does not mean that this negates the community caretaker function," the State argued. Furthermore, it stated, reasonable suspicion was not required in this case because Defendant was incapacitated and therefore incapable of being seized under the Fourth Amendment.

The district court held a hearing on Defendant's motion on October 6, 2008, and the arresting officer was the only witness to testify. He stated that on the evening

3

of March 3, 2008, he was working the graveyard shift and patrolling Highway 64 near Waterflow, New Mexico. As he approached the carwash, he was traveling westbound in his patrol car and noticed Defendant's pickup truck parked next to the carwash with its headlights on and engine running. The officer testified that this occurred after 11:00 p.m. on a cold evening, and it was strange, because Defendant's truck was not parked in a carwash bay. Furthermore, the carwash had recently been burglarized on one occasion and vandalized on another. After pulling in to investigate, the officer exited his patrol car and heard Defendant's stereo "blaring." The truck's windows were heavily tinted and prevented him from seeing inside. The officer then knocked on the window to get the attention of any possible occupant(s). He received no response, knocked a second time, and again received no response.

At this point, the officer testified he opened Defendant's door "because I wanted to make sure somebody wasn't dead in there—you know? It just seemed weird." In addition to investigating and preventing crimes, he testified that his duties also included seeing after the well-being of the citizens of the county. When he opened the pickup truck door, the officer saw Defendant slumped over the steering wheel with drool coming from his mouth. Worried for Defendant's safety, the officer testified that it took a couple of minutes to rouse him. He stated that he could smell alcohol when he opened the door and, upon further investigation, arrested Defendant

4

for DWI. On cross-examination, defense counsel established that the arresting officer described the pickup as a "suspicious vehicle" on more than one recorded occasion; similarly, defense counsel sought to establish that the encounter was a criminal investigation from the moment the officer pulled into the carwash until Defendant was arrested.

At the conclusion of the hearing, the district court took the matter under advisement and later issued an order denying Defendant's motion. In it, the court found that the arresting officer was not investigating a crime at the time he opened the pickup truck door. Simply knocking on the window was insufficient to wake Defendant and, therefore, the court concluded, the arresting officer properly exercised his function as a community caretaker by "checking on [Defendant]."

On appeal, neither party disputes that Defendant properly invoked his rights under both the United States and New Mexico Constitutions. *See State v. Gomez*, 1997-NMSC-006, ¶¶ 22-23, 122 N.M. 777, 932 P.2d 1 (holding that the New Mexico Constitution provides greater protections than its federal counterpart and outlining the proper manner in which the defendant should invoke it). Accordingly, Defendant argues he was improperly seized under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution at the moment the officer opened his pickup truck door without reasonable suspicion. The State

5

argues: first, that no seizure occurred in this case because the officer made no show of authority and because Defendant was incapacitated; and second, that no reasonable suspicion was necessary because the arresting officer was acting as a community caretaker at the time he opened the door. We consider these arguments below.

**DISCUSSION**

**Standard of Review**

In search and seizure cases, we review a district court's denial of a motion to suppress as a mixed question of law and fact. *State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032. We accord deference to the district court's findings of fact; and as long as they are supported by substantial evidence, we view such facts in the light most favorable to the prevailing party. *Id*. The propriety of a search, however, ultimately rests on whether it was reasonable, and we analyze that question as a matter of law, reviewed de novo. *Id*. Our task is "to shape the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context." *Id*. (internal quotation marks and citation omitted).

**The Community Caretaker Doctrine**

All United States citizens possess the right to be free from unreasonable searches and seizures, U.S. Const. amend. IV; *see Doe v. State*, 88 N.M. 347, 352, 540 P.2d 827, 832 (Ct. App. 1975), and whether that right has been denied turns on a

6

citizen's constitutionally recognized expectation of privacy, which is generally less in a vehicle than a home. *Ryon*, 2005-NMSC-005, ¶ 23. Nevertheless, in New Mexico, a citizen's expectation of privacy in his vehicle is somewhat higher than under the United States Constitution. *See State v. Bomboy*, 2008-NMSC-029, ¶ 5, 144 N.M. 151, 184 P.3d 1045 (generally requiring a warrant for vehicle searches unless the search falls under an exception); *see also* N.M. Const. art. II, § 10.

The community caretaker doctrine recognizes that police serve two important functions. As criminal investigators, they work to ferret out crime, investigate criminal acts, and accumulate evidence for use in court. As community caretakers, police act outside and apart from their role as criminal investigators, for example, when they assist stranded motorists. *Ryon*, 2005-NMSC-005, ¶ 13. In fulfilling this second function, neither reasonable suspicion nor probable cause binds police when they effect a seizure. *Id.* ¶ 24 ("[W]arrants, probable cause, and reasonable suspicion are not required when police are engaged in activities that are unrelated to crime-solving."). Instead, the appropriate inquiry becomes whether officers acted reasonably under the particular facts of the case. *Id.* In making that determination, courts must balance "the public need and interest furthered by the police conduct against the degree of and nature of the intrusion upon the privacy of the citizen." *Id.* (internal quotation marks and citation omitted).

Applying a balancing test of this nature is always a fact-specific endeavor, especially since officers can shift quickly from moment to moment between criminal investigator and community caretaker. Nevertheless, several applications of the community caretaker doctrine provide guideposts. Our Supreme Court has observed, for example, that police may act as community caretakers when they provide emergency aid, impound and inventory vehicles, or generally act as public servants outside their criminal investigative capacity. *Id.* ¶ 25; *see Mincey v. Arizona*, 437 U.S. 385, 392 (1978) (observing that it may be appropriate in some instances for police to act without a warrant in the event a person requires emergency aid); *South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976) (holding that police may seize and search vehicles for purposes of traffic safety); *Cady v. Dombrowski,* 413 U.S. 433, 448 (1973) (holding that officers may search an impounded vehicle for safety purposes when they reasonably believe it to contain a hazard such as a firearm). Likewise, in *State v. Montano*, this Court observed that an officer would likely be within his caretaking function if he stopped a bleeding man and inquired about his condition. 2009-NMCA-130, ¶¶ 3-4, 17, 147 N.M. 379, 223 P.3d 376. We drew the line, however, at the point where that same officer began to question the bleeding man about his identity and ran his name through a computerized database to check for pending criminal violations. *Id.* ¶¶ 17, 20 ("We are struck by the officer's complete

failure . . . to inquire regarding [the d]efendant's physical or mental condition or to act in a way that would indicate any concern for [the d]efendant's welfare[.]"). Though the line between community caretaker and criminal investigator is often blurry and fact-dependent, a common thread unites all community caretaker encounters. For an officer to act as a community caretaker, he must have been motivated by a desire to aid and not a desire to investigate. *Ryon*, 2005-NMSC-005, ¶ 25.

In the instant case, the district court found: (1) that the arresting officer was not investigating a crime at the time he opened the pickup truck door; (2) that simply knocking on the pickup truck window was insufficient to wake Defendant; and (3) that the arresting officer was properly acting as a community caretaker when he opened the door to check on Defendant. The first two, as findings of fact, we analyze for substantial evidence; the third, as a conclusion of law going to the reasonableness of the alleged seizure, we analyze de novo.

Substantial evidence supports the district court's findings of fact in this case. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). The arresting officer testified that when he pulled into the carwash and saw Defendant's pickup, it was late at night and cold outside. The truck's lights were on, with the

9

engine running, the stereo playing loudly, and the windows tinted so as to prevent seeing into the cab of the truck. Repeated knocking at the window brought no response from inside. Furthermore, the officer testified, as he opened the door, he was worried about the possibility that any occupant(s) might be injured and unresponsive. This evidence supports the court's finding that the officer was not investigating a crime when he opened the door; and though the officer also admitted to describing the pickup as "suspicious" and testified he was aware of previous crimes on the premises, we resolve these evidentiary conflicts in favor of the district court. *State v. Bloom*, 90 N.M. 192, 194, 561 P.2d 465, 467 (1977) ("Conflicts in evidence are to be resolved by the finder of the facts, in this case the trial court, and this includes conflicts in the testimony of a witness, as in the testimony of the police officer in this case. The trial court, as the finder of the facts, resolved the conflicts against the defendants[.]"); *see In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318 (holding that the question is whether the trial court's "decision is supported by substantial evidence, not whether the trial court could have reached a different conclusion"). We also conclude that the district court properly found that simply knocking on the pickup truck's window was insufficient to wake Defendant. As stated above, the arresting officer described knocking twice on the window without receiving a response, and Defendant offered no evidence to the contrary. Under the circumstances, it was

reasonable for the officer to check if the truck was occupied.

We also hold that the arresting officer acted reasonably as a community caretaker given the facts known to him at the time he opened Defendant's door. This is true whether or not his actions constituted a seizure under either the state or federal constitution. In either case, Defendant was passed out in his pickup truck in a public place. His trucks's headlights and stereo were conspicuously turned on. The engine was running. The stereo was clearly audible to someone standing outside the truck—the arresting officer described it as "blaring"—and the truck's windows were so heavily tinted that a determined observer could not see inside. Certainly, Defendant possessed some interest in continuing to sleep, undisturbed, within such a vehicle; but we hold that the arresting officer, presented with these facts, proceeded in the most reasonable manner possible and exercised the appropriate amount of intrusion. He observed the truck, pulled into the carwash to see what was going on, unsuccessfully peered inside, and knocked on the window at least twice. When he received no response, he speculated that any occupant(s) might need help and opened the door to offer it. As stated above, substantial evidence supports the finding that the officer was not engaged in investigating a crime, at least at the time he opened the truck's door. Weighing the community value of providing assistance to citizens who might be in distress against the intrusion of opening this particular truck's door, we

11

hold that the officer acted reasonably as a community caretaker.

**CONCLUSION**

For the reasons stated herein, we affirm the district court's order denying Defendant's motion to suppress.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**ROBERT E. ROBLES, Judge**

12