This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                  **NO. 32,064**

**TERESA MADRID,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**J.C. Robinson, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** Defendant appeals her convictions for robbery, bribery or intimidation of a witness, and larceny. Defendant makes three arguments on appeal. Defendant first contends that the district court erred when it denied her motion to suppress an out-of-court photographic identification because the photo array that rendered the identification was impermissibly suggestive and because the witness's identification was not otherwise reliable. Second, Defendant argues that the district court erred when it admitted the same witness's derivative in-court identification, or in the alternative, that trial counsel was ineffective by failing to object to the in-court identification. Third, Defendant contends that her convictions for both robbery and larceny constitute double jeopardy, an argument to which the State concedes. We hold that the district court did not err when it denied the motion to suppress and admitted the in-court identification and that trial counsel was not ineffective by failing to object to the in-court identification. However, we agree that Defendant's convictions for both robbery and larceny constitute double jeopardy. We therefore affirm Defendant's convictions for robbery and intimidation of a witness and vacate her conviction for larceny.

**BACKGROUND**

**{2}** On March 6, 2010, the Smoke Shoppe in Silver City, New Mexico, was robbed at gunpoint. The underlying facts of the robbery, which were captured on surveillance cameras located both inside and outside the store, are largely undisputed. At the time of the robbery, Jennifer Rael was the only employee working. While she was alone

2

in the store, a woman wearing dark, baggy clothing and a hooded jacket zipped up and with the hood over her head walked up to the register, pointed a handgun at Rael's chest, and demanded that Rael give her all of the money in the store. Rael quickly emptied the register and handed the money to the robber, looking up at the robber's uncovered face several times. The robber pulled the till out of the register to make sure there was nothing underneath. Upon the robber's demand, Rael then opened the other register on the other side of the store and showed the robber it was empty. Afterward, the robber told Rael not to call the cops or else she was going to come back and kill her, then she left the store. Rael saw the robber drive away in a grayish four-door car, and she then locked the drive-up windows and door and called 911. The robber was in the Smoke Shoppe for less than thirty seconds. Approximately $600 was stolen.

{3} Defendant was arrested and charged with three crimes: (1) armed robbery, contrary to NMSA 1978, § 30-16-2 (1973); (2) bribery or intimidation of a witness, contrary to NMSA 1978, § 30-24-3(A)(3) (1997); and (3) larceny over $500, contrary to NMSA 1978, § 30-16-1(D) (2006). At trial, the jury heard testimony and viewed surveillance videos and photograph stills from the robbery. The jury was able to compare photograph stills of what Defendant admitted was her car, which were taken at the Smoke Shoppe several hours before the robbery, with photograph stills of the car used during the robbery. The jury also viewed the photo array from which Rael

3

identified Defendant. In addition, Rael testified and made an in-court identification of Defendant as the robber, to which defense counsel did not object. Defendant presented evidence in her defense at trial that the case was based on mistaken identity and that she had an alibi.

{4} The jury found Defendant guilty of all three counts with which she was charged, with firearm enhancements added to each count. Defendant was convicted and sentenced and now appeals. We include additional facts in this Opinion as necessary in the context of our analysis.

**DISCUSSION**

**Because the Procedure Used for the Out-of-Court Identification Was Not Impermissibly Suggestive, the District Court Did Not Err in Denying Defendant's Motion to Suppress**

{5} Defendant's primary argument on appeal is that the district court erred in denying her pretrial motion to suppress Rael's out-of-court photographic identification. She contends that the procedure used to render the identification was impermissibly suggestive. Further, she argues that, viewing the facts in light of current knowledge regarding the problems inherent in eyewitness identification, Rael's identification of Defendant lacked sufficient indicia of reliability. We start with the relevant facts, then turn to the legal analysis of this issue.

{6} On the day of the robbery, Rael gave an oral statement to Detective Castillo at the Silver City Police Department. During her statement, Rael estimated that the

4

robber was approximately 5'5", weighed about 130 pounds, and appeared to be between the ages of twenty-five and thirty. She described the robber as a Hispanic female with a light complexion, brown eyes, and a slender face, who appeared to be wearing no makeup. Rael noted that the robber's face appeared to have some scarring, but she did not notice any tattoos on the robber's face, which was the only uncovered part of Defendant's body during the robbery. Rael could not tell what color or style of hair the robber had. Rael also told Detective Castillo that the robber's demeanor and looks were such that she deemed her to be "butch," "boyish," a "tom boy [sic]," or "possibly a lesbian." Detective Castillo did not develop a suspect based on Rael's statement. However, several hours after Rael gave her statement, Detective Castillo received confidential information that Defendant fit the description of the robber and owned a vehicle that fit the description of the vehicle the robber drove at the time of the robbery.

{7}     Detective Castillo subsequently requested that an agency called the High Intensity Drug Trafficking Areas (HIDTA) generate a photo array. Detective Castillo provided Defendant's date of birth, social security number, possible driver's license number, and a brief physical description to HIDTA. Based on this information, HIDTA generated a six-photo array that included a photograph of Defendant.

{8}     Two days after the robbery, Detective Castillo called Rael into the station to view the photo array. When Rael arrived at the police station, Detective Castillo

5

instructed her that he was going to show her six photographs, that she should look at them carefully to see if she saw anyone there who looked like the robber, and that if so, she should point out that person. Detective Castillo did not tell Rael that the array contained a photograph of the suspected robber, and Rael did not get the impression that the robber would necessarily be in the array. When she looked at the array, Rael noticed that the bottom row of photographs seemed squished or slightly distorted and pointed that out to Detective Castillo. However, Rael did not think the photographs had been altered, just that the distortion was caused by "the way [the] printer prints out things."

{9}     Rael identified Defendant as the person who robbed her. She estimated that it took her several minutes to identify Defendant. Detective Castillo testified that it took Rael less than a minute and that she did not waver before choosing Defendant.

{10}     Defendant filed a pretrial motion to suppress Rael's out-of-court identification of Defendant, contending the photo array was impermissibly suggestive and that Rael's identification was not otherwise reliable. In the motion, Defendant pointed out differences between Rael's description of the robber and Defendant's photograph in the array, specifically that Rael said the suspect did not have any tattoos, but the array shows Defendant has prominent tattoos on her neck. Defendant also asserted there were differences between Defendant's photograph and the other photographs in the array; specifically that, although in the photo array Defendant was "clearly smiling"

6

and "sporting a boyish haircut," four of the other females in the array had "an obvious feminine hair style," and were neither smiling nor distorted in the array. Defendant also stated that the remaining person depicted in the array "apparently may not even be a female," and that "[h]e or she has no expression on the face." However, Defendant's motion did not explain how these differences between the photographs made the array impermissibly suggestive or how they made Rael's identification of Defendant otherwise unreliable.

{11}     At the hearing on the motion, the district court viewed the surveillance videos taken of the robbery and the photo array and heard testimony from Rael and Detective Castillo. Rael's description of Defendant was consistent with her initial statement, except she described Defendant as one to two inches taller and ten pounds lighter. When shown the photo array, Rael recognized it with the exception of one of the photographs that she did not believe was in the array she viewed at the police station. Rael also testified that she suffers from several medical conditions and was not taking medications for these conditions at the time of the robbery, but that those conditions do not affect her ability to perceive.

{12}     At the conclusion of the hearing, the district court noted "[t]he important thing is that there's no question based on the surveillance video and the witness's testimony that [Rael] had an opportunity to observe the suspect." The district court then entered the following oral findings:

Ms. Rael testified to her version of the events which are consistent with the surveillance camera. She was quickly robbed and her identification was substantially that [the robber] was female, black pants, black hoodie, black beanie, Hispanic, 5'6" to [5'7"], 120 pounds, age twenty-five to thirty. [The photo array] appears to be pictures of six Hispanic females, all relatively of the same age. Based on Ms. Rael's testimony, if any . . . suspect had tattoos, [Ms. Rael] was unable to see [them] because of the hoodie, and she testified on the stand that she could only see [the robber] from the chin up the way she was holding her hand underneath her chin. So if we're talking about the tattoo that appears in [Defendant's photograph], then there is no evidence before the court that this is relevant, because there is no evidence that the witness could have seen a tattoo on the throat of a suspect. This is a group of photographs, one of the defendant. There is nothing to show that these people aren't similar in experience. I can't tell from looking at any of these pictures whether someone has a ponytail or not . . . all of their hair is pulled back. There is only one picture in here that has a part. The other five . . . there's no part in their hair. And so the court finds that this group of photographs is similar in appearance.

The district court concluded the array was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification and denied Defendant's motion.

{13}     The standard of review we employ in reviewing a district court's denial of the motion to suppress is "whether the law was correctly applied to the facts, viewing them in the manner most favorable to the prevailing party, and drawing all reasonable inferences in support of the court's decision." *State v. Salgado*, 1999-NMSC-008, ¶ 16, 126 N.M. 691, 974 P.2d 661 (alteration, internal quotation marks, and citation omitted). Our Supreme Court has established a two-prong test for reviewing the admissibility of an out-of-court photographic identification. First, we "determine

8

whether the procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State v. Jacobs*, 2000-NMSC-026, ¶ 30, 129 N.M. 448, 10 P.3d 127; *State v. Stampley*, 1999-NMSC-027, ¶ 14, 127 N.M. 426, 982 P.2d 477. Next, if we conclude the procedure used was impermissibly suggestive, we determine whether, "under the totality of the circumstances, the identification was still reliable." *Jacobs*, 2000-NMSC-026, ¶ 30; *Stampley*, 1999-NMSC-027, ¶ 14.

{14}     In this case, the district court determined under the first prong of the test that the array was not impermissibly suggestive. Defendant takes issue with the district court's decision based on both prongs of the test and additionally contends that we should decide this case based on "what is now generally known and accepted" about the problems with eyewitness identification.

{15}     We start with the first prong: whether the district court erred in denying the motion to suppress the out-of-court identification because the array was impermissibly suggestive. In order to determine whether a photographic identification was impermissibly suggestive, a court should consider: (1) the size of the array, (2) the details of the photographs in the array, and (3) the manner of the array's presentation by the officers. *Salgado*, 1999-NMSC-008, ¶ 17. The size of the array "affects the weight of any irregularities in the array." *Id.* The fewer photographs there are in the array, "the more closely the array must be scrutinized for suggestive irregularities."

*Id.* (alteration, internal quotation marks, and citation omitted); *see State v. Johnson*, 2004-NMCA-058, ¶ 14, 135 N.M. 567, 92 P.3d 13 (noting that "[s]howup identifications [consisting of a single defendant] are inherently suggestive, and their use should be avoided" (internal quotation marks and citation omitted)).

{16}     Defendant's arguments below, as on appeal, focus primarily on the photo array itself and not on the manner of presentation of the array. With regard to the size of the array, Defendant contends that, although the array contained six photographs, the "functional" size of array was no more than two photographs because only Defendant's photograph and one other photograph were "highly distorted." Moreover, Defendant asserts that, because Rael did not recognize the other distorted photograph at the hearing on the motion to suppress, the functional size of the array was arguably only one photograph, which she contends means that, absent exigent circumstances, it was impermissibly suggestive. We disagree.

{17}     In *Salgado*, our Supreme Court rejected a similar argument. There, the defendant argued that an array consisting of six photographs was too small and, based on expert testimony that only two of the photographs looked like the defendant, asserted that this reduced the "total" size of the array to only two photographs. 1999-NMSC-008, ¶ 17. Unpersuaded by the defendant's argument, our Supreme Court concluded that the district court correctly decided that the array was not impermissibly suggestive because it had "noted that all six individuals in the photographs looked

very similar, that they all had the same coloring, hairstyles, and facial hair, and that they appeared to be of the same ethnic status and age." *Id.* ¶¶ 18, 23.

{18} With regard to the details of the photographs in the array in this case, Defendant makes several arguments, all of which hinge on the assumption that the differences between Defendant's photograph and the other photographs in the array render the array unduly suggestive. For instance, Defendant contends that, because Defendant is the only person smiling broadly in her photograph and because her photograph is one of the photographs that appears distorted, it stands out. Defendant also argues that none of the other women depicted in the array physically resemble Defendant because they are all "feminine" in appearance, wearing make-up, appear to have their hair pulled back into ponytails or buns as opposed to sporting a "short 'boyish' haircut," and "none fit popular stereotypes of someone who appears 'boyish,' a 'tomboy,' or 'butch.' " Finally, Defendant argues that the characteristics that the district court deemed irrelevant because Rael could not see them at the time of the robbery, such as her neck tattoo, should also be considered in determining whether the array was unduly suggestive because they make Defendant's photograph stand out from the rest. We are not persuaded.

{19} Our courts consistently have upheld the admission of out-of-court identifications based on photo arrays similar to the one shown to Rael—namely, where the photographs in the arrays depicted persons of the same ethnicity, are of a

relatively similar age, and have relatively similar facial characteristics and hair as the defendant. For instance, in *Stampley*, our Supreme Court held that a photo array was not impermissibly suggestive where all of the subjects in the array depicted a young, African-American male with short hair and very little facial hair, the same age, race, and stature as the defendant. 1999-NMSC-027, ¶ 17. In *Stampley*, the Court rejected the argument that the array was impermissibly suggestive because the defendant was the only person in the array with his head tilted back and who was wearing a t-shirt, and he and only one other person in the array had a heavy or stocky build. *Id.* ¶ 15. Our Supreme Court stated that nothing existed in the record to suggest that purported differences in posture, clothing, and body build were impermissibly suggestive and observed that "[a]ny array composed of different individuals must necessarily contain certain differences." *Id.* ¶ 17 (internal quotation marks and citation omitted). Similarly, in *State v. Clark*, we concluded that an array containing nine photographs was not impermissibly suggestive where all of the photographs depicted white males about the same age and hirsuteness as defendant. 1986-NMCA-058, ¶ 42, 104 N.M. 434, 722 P.2d 685. We rejected the defendant's argument that the photo array was impermissibly suggestive because the defendant was "clearly older," and the "only one smiling" in the array, that two photographs were aligned horizontally, one photograph was out of focus, and each subject had some distinguishing characteristic,

such as "a dimple," "a mole," "a menacing look," or a subject who is "looking up with his eyes." *Id.* ¶¶ 41-42.

**{20}** Defendant also argues that, by providing information to HIDTA based on Defendant rather than based on Rael's description of the robber, HIDTA could not have selected and did not select "foils" to fill out the photo array with photographs that matched Rael's description. However, Defendant cites no legal authority that an array must be generated from a witness's description as opposed to a general description of the suspect, and we will not consider propositions that are unsupported by citation to authority. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969. Finally, to the extent Defendant argues that the photo array should have consisted solely of images containing "popular stereotypes" based on the way Rael characterized Defendant's sexual orientation, that argument is also wholly unsupported by authority, and we do not countenance it. *See id.*

**{21}** Giving deference to the district court's factual findings, we see no basis to deviate from the holdings in cases where our appellate courts have held that similar photo arrays were not impermissibly suggestive. Here, the district court found that the six-photograph array was composed of all Hispanic females, of relatively the same age and similar experience, all of whom had their hair pulled back from their faces, and that, as a whole, the group of photographs was similar in appearance. Moreover,

13

established case law makes clear that the characteristics that Defendant contends makes her photograph stand out—such as her broad smile or the purported distortion in her photograph—do not make a photo array impermissibly suggestive. Viewing the facts in the manner most favorable to the State and drawing all reasonable inferences in support of the district court's decision, we conclude that the district court properly determined that the array was not impermissibly suggestive. *See Salgado*, 1999-NMSC-008, ¶ 16. We therefore uphold the district court's decision denying Defendant's motion to suppress.

{22} We briefly address Defendant's remaining arguments regarding the photo array. First, although couched in different terms, Defendant appears to attack the manner of presentation of the array for the first time on appeal. Specifically, Defendant asserts that "[w]hen combined with the inherent suggestiveness of the photo array" itself, various "system variables" tainted the procedure so much that admission of Rael's identification was plain or fundamental error. Defendant contends that: (1) because Detective Castillo administered the photo array himself and knew Defendant was the suspect, "he may have consciously or unconsciously communicated" that the photograph of Defendant was the robber; (2) "[c]ontrary to well-established police procedure," Detective Castillo "did not caution" Rael that the suspect may or may not be in the array, "nor debrief her formally afterwards on her level of confidence;" and (3) Detective Castillo showed Rael the photographs "simultaneously rather than

14

sequentially." Because Defendant makes no claim that this argument was preserved, we review it only for fundamental error. *See State v. Romero*, 2013-NMCA-101, ¶ 19, 311 P.3d 1205, *cert. denied*, 2013-NMCERT-009, 311 P.3d 452. Defendant neither provides authority for the assertion that any of these purported "system variables" are objectionable nor does she articulate how they were "so egregious" or "unduly coercive on the jury as to cause the jury to abandon its honest convictions." *See id.* ¶ 20 (alteration, internal quotation marks, and citation omitted). Thus, Defendant cannot establish that fundamental error resulted.

{23}    In addition, Defendant argues that the State failed to present clear and convincing evidence that, under the totality of the circumstances, Rael's identification of Defendant was reliable despite the purported taint from suggestive police procedures. This argument also fails. Under the two-prong test, we only need to determine whether a witness's description was reliable under the totality of the circumstances if we first conclude that an out-of-court identification procedure was impermissibly suggestive. *See Stampley*, 1999-NMSC-027, ¶ 14. Put differently, the totality of the circumstances test broadens, rather than narrows, an appellate court's ability to affirm a district court's admission of an out-of-court identification when sufficient indicia of reliability exist, even when the out-of-court identification procedure itself was impermissibly suggestive. *See State v. Flores*, 2010-NMSC-002, ¶¶ 56-60, 147 N.M. 542, 226 P.3d 641 (concluding that, although out-of-court

15

identification procedure using only one photograph was impermissibly suggestive, the totality of the circumstances strongly supported the district court's findings that the witness's identification of the defendant was reliable).

{24} In any event, a review of the totality of the circumstances supports the reliability of Rael's eyewitness identification. To determine reliability, our courts weigh "the corrupting effect of the suggestive identification," *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 20, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted), against: (1) "the opportunity of the witness to view the criminal at the time of the crime," (2) "the witness's degree of attention at the time of the crime," (3) "the accuracy of the witness's earlier descriptions of the criminal," (4) "the certainty of the witness about the identification," and (5) "the time elapsed between the crime and the identification confrontation." *Jacobs*, 2000-NMSC-026, ¶ 30. Here, all of the factors weigh in favor of reliability. First, as the district court found, Rael had a sufficient opportunity to view the robber when she saw the robber's unobstructed face at close range during the robbery. *See Stampley*, 1999-NMSC-027, ¶¶ 24-25 (concluding that the witnesses had a sufficient opportunity to view the criminal when they saw his face through an open car window for two to thirty seconds and noting that only a few seconds can be adequate to make a photographic identification reliable). Second, nothing in the record rebuts that the robber had Rael's full attention when she was handing the money to the robber and, although Rael

16

suffers from various untreated conditions, she testified that neither those conditions nor the fact that they are untreated has any effect on her ability to perceive. *See id.* ¶ 26 (concluding that where witnesses were intoxicated at the time of the crime but testified that the effect of drugs and alcohol did not detract from their degree of attention, their identifications were not necessarily unreliable and this was a matter best determined by the jury). Third, Rael's description of the robber closely approximated Defendant's physical appearance. *See id.* ¶ 28 (noting that where the witnesses' descriptions were similar to each other and to the defendant's physical appearance, some minor discrepancies did not preclude the out-of-court identification from going to the jury). Fourth, Rael never wavered in her identification from the time she first picked Defendant out of the photo array. Finally, the two-day time lapse between the robbery and Rael's identification of Defendant is sufficient to support that her identification was reliable. *See id.* ¶ 29 (noting that a one month lapse was not unreasonable where witnesses had the opportunity to view the shooter and where their attention was focused directly on the shooter).

{25}     Defendant also contends we should view this case in light of currently accepted knowledge about the problems with the reliability of eyewitness testimony. To this end, Defendant makes various arguments that eyewitness testimony is inherently unreliable based on what she describes as "divided attention," "weapon focus," "disguise-effect," "stress," and "unconscious transference." These arguments that are

17

peppered throughout Defendant's brief are based wholly on out-of-state precedent, as well as studies and law review articles regarding what Defendant deems to be current, accepted knowledge about eyewitness identifications. However, we do not rely on this authority because the issue is governed by New Mexico Supreme Court precedent. *See Aguilera v. Palm Harbor Homes, Inc.*, 2002-NMSC-029, ¶ 6, 132 N.M. 715, 54 P.3d 993 (stating that the Court of Appeals remains bound by Supreme Court precedent). We further note that, to the extent Defendant's argument is based on federal law, *Manson v. Brathwaite*, 432 U.S. 98 (1977)—the leading United States Supreme Court case on the admissibility of out-of-court photographic identifications—the Court considered and rejected similar arguments based on studies about the reliability of eyewitness testimony. *Id.* at 111-12.

**The In-Court Identification Was Properly Admissible**

{26}    Defendant also claims that Rael's in-court identification was unreliable because it was derived from the same underlying circumstances as the out-of-court photographic identification. In the alternative, Defendant argues that counsel's failure to object to the in-court identification at trial constitutes ineffective assistance of counsel. However, because we have concluded that the pretrial identification procedures were not unduly suggestive, "they could not taint any subsequent identification." *Stampley*, 1999-NMSC-027, ¶ 31. Moreover, "[a]n in-court identification which is independent of, and not tainted by, the out-of-court

18

identification is admissible." *Jacobs*, 2000-NMSC-026, ¶ 30. Because admission of the in-court identification was proper, it did not result in fundamental error. *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 ("The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice."). For the same reason, Defendant cannot show that she was prejudiced by her counsel's failure to object and therefore cannot establish a prima facie case for ineffective assistance of counsel. *See Patterson*, 2001-NMSC-013, ¶ 18 (stating that to establish a prima facie case for ineffective assistance, "[a] defendant convicted at trial must prove that trial counsel's unreasonable performance calls into doubt the reliability of the trial results" (internal quotation marks and citation omitted)).

**Defendant's Convictions for Both Larceny and Robbery Constitute Double Jeopardy**

{27}     As a final matter, we address Defendant's contention that her convictions for both robbery and larceny based on a single incident constitute double jeopardy. The State concedes that, because this case involves a single taking from a single victim on a single occasion and because larceny is a lesser-included offense of robbery, Defendant's conviction for larceny should be vacated. Although we are not bound by the State's concession, we agree. *See State v. Garcia*, 1990-NMCA-065, ¶ 17, 110

N.M. 419, 796 P.2d 1115 (noting that an appellate court is not bound by the prosecution's concession of an issue).

{28}     Double jeopardy presents "a question of law, which we review de novo." *State v. Montoya*, 2013-NMSC-020, ¶ 22, 306 P.3d 426 (internal quotation marks and citation omitted). Here, there is no dispute that the conduct underlying the crimes is unitary. In addition, the only difference in the elements of the two crimes is that robbery contains an additional element: use or threatened use of force. *Compare* § 30-16-1(A) ("Larceny consists of the stealing of anything of value that belongs to another."), *with* § 30-16-2 ("Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence."). Because the elements of larceny are subsumed within the elements of robbery, Defendant's convictions for robbery and larceny violate double jeopardy, and both convictions cannot stand. *See State v. Swick*, 2012-NMSC-018, ¶¶ 24, 26-27, 279 P.3d 747 (noting that where elements of one crime are subsumed by elements of another, convictions for both cannot stand for double jeopardy purposes). Larceny carries the shorter sentence, and we therefore vacate that conviction. *See Montoya*, 2013-NMSC-020, ¶ 55 (stating that when one conviction must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence); *compare* § 30-16-1(D) (defining larceny above $500 as a fourth degree felony), *and* NMSA 1978, § 31-18-15(A)(10) (2007) (stating that

20

the basic sentence for a fourth degree felony is eighteen months imprisonment), *with* § 30-16-2 (defining robbery as a third degree felony), *and* § 31-18-15(A)(9) (stating that the basic sentence for a third degree felony is three years imprisonment).

**CONCLUSION**

{29}     For the foregoing reasons, we affirm Defendant's convictions for robbery and bribery or intimidation of a witness and vacate Defendant's conviction for larceny.

{30}     **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____

**JAMES J. WECHSLER, Judge**



_____

**CYNTHIA A. FRY, Judge**